United States District Court
Middle District of Florida
Jacksonville Division

**ALLAN FUNK,**

    *Plaintiff,*

v.                                                                                          No. 3:20-cv-460-PDB

**KILOLO KIJAKAZI, ACTING COMMISSIONER
OF SOCIAL SECURITY,**

    *Defendant.*

---

# Order

Allan Funk brings this action under 42 U.S.C. §§ 405(g) and 1383(c) to review a final decision of the Acting Commissioner of Social Security denying his application for supplemental security income. Doc. 1. Under review is a decision by an Administrative Law Judge (ALJ) signed on January 18, 2019. Tr. 26–39. Funk contends the ALJ erred in rejecting Funk's testimony about his mental impairments and in failing to resolve an asserted conflict between testimony of a vocational expert (VE) and the Dictionary of Occupational Titles (DOT). Doc. 17. The Commissioner contends there is no error. Doc. 18.

## I.   Background

Funk was born in 1966. Tr. 71. In 1998, he was admitted to the hospital after being hit in the head with an object. Tr. 337–39, 257–58; *see also* Tr. 282–348. He had a depressed skull fracture, a subarachnoid hemorrhage, and decreased hearing in his left ear. Tr. 337. After three days, he was discharged in stable condition. Tr. 337. He reports experiencing auditory hallucinations

since then. Tr. 258.

Funk applied for benefits on January 11, 2016, alleging he had become disabled on January 1, 2004, from the head injury, short-term memory loss, depression, anxiety, post-traumatic stress disorder, brain damage, chronic obstructive pulmonary disease, and hearing loss. Tr. 72. He amended the onset date to May 28, 2016. Tr. 26, 55. He proceeded through the administrative process, failing at each level. Tr. 1–5, 70–93, 96–103. This action followed. Doc. 1.

## II. ALJ's Decision

The ALJ conducted a hearing in October 2018, at which Funk—who was represented by counsel—and the VE testified. Tr. 44–69. Afterward, the ALJ issued the decision under review, proceeding through the five-step sequential process.[1]

At step one, the ALJ found Funk has not engaged in "substantial gainful activity" since January 11, 2016. Tr. 28 (emphasis omitted).

At step two, the ALJ found Funk has severe impairments of "chronic bronchitis, spine disorders, affective disorders, anxiety disorders, remote history of head injury rule-out traumatic brain injury, psychotic disorder secondary to traumatic brain injury with hallucinations, and post-traumatic

---

[1]The Social Security Administration (SSA) uses a five-step sequential process to decide if a person is disabled, asking whether (1) he is engaged in substantial gainful activity, (2) he has a severe impairment or combination of impairments, (3) the impairment or combination of impairments meets or equals the severity of anything in the regulatory listings, 20 C.F.R. Part 404, Subpart P, App'x 1, (4) he can perform any of his past relevant work given his residual functional capacity (RFC), and (5) there are a significant number of jobs in the national economy he can perform given his RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4).

2

stress disorder." Tr. 28 (emphasis and citation omitted). The ALJ found other impairments not severe. Tr. 28–29.

At step three, the ALJ found Funk has no impairment or combination of impairments that meets or medically equals the severity of any impairment in the regulatory listings, 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 29.

The ALJ found Funk has the RFC to perform "light work"[2] with additional limitations:

> [H]e can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs. He can never climb ladders, ropes, or scaffolds. The claimant can occasionally be exposed to unprotected heights, moving mechanical parts, dust, odors, fumes, and pulmonary irritants. The claimant is limited to performing simple, routine tasks and making simple work-related decisions. He is able to occasionally interact with supervisors and co-workers, but can never interact with the public. The claimant is limited to tolerating few changes in a routine work setting.

Tr. 31 (emphasis omitted).

At step four, the ALJ found Funk has no "past relevant work."[3] Tr. 37.

At step five, the ALJ relied on the VE's testimony and found Funk can perform other jobs as an "office helper," a "mail clerk," and an "assembler II." Tr. 37–38 (capitalization omitted). The ALJ therefore found no disability. Tr. 38–39.

---

[2]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b).

[3]"'Past relevant work' is work that [a claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 416.960(b)(1).

3

### III. Standard of Review

A court's review of a decision by the Commissioner is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoted authority omitted). The "threshold for such evidentiary sufficiency is not high." *Id.*

If substantial evidence supports an ALJ's decision, a court must affirm, even if other evidence preponderates against the factual findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). The court may not decide facts anew, reweigh evidence, make credibility determinations, or substitute its judgment for the Commissioner's judgment. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

"[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). If "remand would be an idle and useless formality," a reviewing court is not required to "convert judicial review of agency action into a ping-pong game." *N.L.R.B. v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969).

### IV. Analysis

#### A. *The ALJ did not err in rejecting Funk's testimony about his mental impairments.*

To determine disability, the Social Security Administration (SSA) considers a claimant's symptoms and the extent to which they "can reasonably be accepted as consistent with the objective medical evidence and other

4

evidence." 20 C.F.R. § 416.929(a). Statements about symptoms alone cannot establish disability. *Id.* § 416.929(a), (b). Objective medical evidence from an acceptable medical source must show a medical impairment that "could reasonably be expected to produce the … symptoms" and, when considered with the other evidence, would lead to a finding of disability. *Id.* § 416.929(a), (b).

The finding that an impairment could reasonably be expected to produce the alleged symptoms does not involve a finding on the intensity, persistence, or functionally limiting effects of the symptoms. *Id.* § 416.929(b). For that finding, the SSA considers all available evidence, including medical history, medical signs, laboratory findings, and statements about how the symptoms affect the claimant. *Id.* § 416.929(a), (c). The SSA then determines the extent to which the "alleged functional limitations and restrictions due to … symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how" the symptoms affect the ability to work. *Id.* § 416.929(a).

Factors relevant to evaluating the claimant's symptoms include daily activities; the location, duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication to alleviate the symptoms; treatment for the symptoms other than medication; and measures used to relieve the symptoms. *Id.* § 416.929(c)(3).

To determine the extent to which the claimant's symptoms affect his capacity to perform basic work activities, the SSA considers statements about the intensity, persistence, and limiting effects of the symptoms; the statements in relation to the objective medical and other evidence; any inconsistencies in

5

the evidence; and any conflicts between the statements and other evidence, including history, signs, laboratory findings, and statements by others. *Id.* § 416.929(c)(4).

An ALJ must clearly articulate explicit and adequate reasons for rejecting a claimant's testimony about symptoms.[4] *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995). A court will not disturb a clearly articulated finding about the claimant's symptoms if it is supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

Here, the ALJ determined that Funk's allegations about the intensity, persistence, and limiting effects of his symptoms are "not entirely consistent" with the evidence of record. Tr. 36. Regarding Funk's mental health symptoms, the ALJ stated:

> [Funk] received conservative treatment that primarily consisted of prescription medication, and has not required psychiatric hospitalization or inpatient treatment. Records indicated improvement in the claimant's mood and other symptoms when he was compliant with treatment. Findings from mental status examinations were generally benign and indicative of no more than moderate symptoms. The consultative examiner observed only mild mental health symptoms or restrictions.
>
> In addition to the objective medical evidence and treatment, the claimant has several activities that are inconsistent with the total

---

[4] Effective March 28, 2016, Social Security Ruling ("SSR") 16-3p rescinded a previous SSR on credibility of a claimant. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) (republished). The SSR removed "credibility" from policy because the regulations do not use that term. *Id.* at *2. The SSR clarified that "subjective symptom evaluation is not an examination of an individual's character." *Id.* Because the ALJ here issued his decision on January 18, 2019, Tr. 39, the new SSR applies. *Cf. Hargress v. Soc. Sec. Admin.*, 883 F.3d 1302, 1308 (11th Cir. 2018) (holding new SSR did not apply because ALJ issued decision before SSR's effective date).

6

inability to work. He is able to live at home, prepare meals, drive, and do some household chores. He can go out alone, shop in stores, and attend to his own personal hygiene needs. The reported activities of daily living after the alleged onset date demonstrate greater functional abilities than the currently alleged limitations. A review of the claimant's work history indicates that the claimant worked only sporadically prior to the alleged disability onset date. A disability report alleged full-time work from January of 2003 to January of 2004, but the certified earnings records documented no reported income in last fifteen years or since 1996. The lack of a consistent work history prior to the alleged disability onset date makes it difficult to determine whether the claimant's continuing unemployment is actually due to medical impairments.

Tr. 37 (citations omitted).

In arguing that the ALJ erred in rejecting Funk's testimony about his mental impairments, Funk contends the ALJ's findings are not supported by substantial evidence. Doc. 17 at 10–15.

Contrary to Funk's contention, the ALJ's findings are supported by substantial evidence. The substantial evidence includes benign examinations, improvement with medication, and Funk's daily activities, all detailed below.

Funk argues the ALJ's finding that Funk's examinations were generally benign is inconsistent with treatment notes showing dysphoric mood, flat or blunted affect, flashbacks, irritability, isolation, avoidance of others, slow and stuttered speech, hallucinations, racing thoughts, paranoia, and hypervigilance. Doc. 17 at 12–13.

This argument is unpersuasive. The ALJ discussed the medical evidence in detail, including many of the medical findings Funk references. *See generally* Tr. 32–36. Although treatment notes often describe Funk's affect as anxious, blunted, or sad and his mood as angry, irritable, anxious, or

7

depressed, Tr. 237, 254–56, 241, 245, 384, 388–93, 397, 404, 408, 412, the finding that they indicate no more than moderate symptoms is supported by substantial evidence. The treatment notes show many normal findings, including normal speech, logical thought processes, relevant thought associations, adequate abstracting ability, no abnormal thought content, no perceptual distortions (e.g., hallucinations), no memory impairments, adequate or mildly impaired attention and concentration, good or fair insight, adequate or mildly impaired judgment, and no suicidal or homicidal ideations. *See* Tr. 254–56 (but showing Funk had racing thoughts); Tr. 245 (but showing Funk had racing thoughts and his immediate retention and recall were impaired); Tr. 249; Tr. 237; Tr. 241 (but showing Funk had auditory hallucinations); Tr. 388 (but showing Funk had slow and stuttered speech, racing thoughts, paranoia, hallucinations, issues with retention and recall, moderately impaired concentration, and suicidal thoughts "at times"); Tr. 384; Tr. 389; Tr. 393 (but showing Funk's remote memory was impaired and his concentration was moderately impaired); Tr. 397; Tr. 404 (but showing Funk had racing thoughts, paranoia, hallucinations, obsessive thoughts, and "passive" suicidal thoughts "from time to time"); Tr. 408; Tr. 412 (but showing Funk's hallucinations were "lessening in frequency"). Substantial evidence supports the ALJ's determination that mental status examinations showed no more than moderate symptoms, which are reflected in an RFC with several mental limitations (simple, routine tasks; simple work-related decisions; occasional interaction with supervisors and co-workers; no interaction with the public; toleration of only few changes in a routine work setting).

Funk argues his treatment notes are inconsistent with the ALJ's finding that his symptoms improved with medication. Doc. 17 at 13. According to

8

Funk, his "significant symptoms" continued even when he complied with his medication regime. Doc. 17 at 13.

This argument likewise is unpersuasive. The ALJ summarized treatment notes showing that although Funk's symptoms were not eliminated, they nonetheless improved when he was taking his medication. *See* Tr. 33–34. In May 2016, Funk reported he was "doing better on the Pristiq," which had "helped with depression" (although he sometimes experienced "episodes"); his "depressive symptoms" began to "decline" (although he had "difficulty" with feeling sad, helpless, and worthless); and his energy and motivation had improved (although he had to "force[] himself to do things"). Tr. 235. In February 2017, he reported better compliance. Tr. 374. He reported the medication had helped with nightmares, "but not fully"; his mood was "fairly stable," but he cried "a lot" (although he still had flashbacks of his head injury and "visions of evil things" that he could not control). Tr. 374. In April and August 2017, he reported he had been forgetting to take his medication, making him "more irritable." Tr. 376, 382. He stated that he still had auditory hallucinations but that he was not "fully compliant" with his medication for hallucinations. Tr. 376, 382. In June 2018, he reported his medication was "working better," his symptoms had "greatly improved" and are worse when they are not "adequately medicated," and his auditory hallucinations had "lessened." Tr. 410. Substantial evidence supports the ALJ's finding that Funk's symptoms improved with medication.

Funk argues the ALJ failed to adequately consider Funk's daily activities. Doc. 17 at 14. Funk argues the evidence shows he cannot perform many daily activities, such as being in crowded places, grocery shopping, and concentrating enough to read a book or follow a conversation. Doc. 17 at 14.

9

This argument also is unpersuasive. Although Funk does not live alone, he usually drives to a friend's house daily, cooks, does laundry, gardens some, watches television, and plays video games; he can pay bills, count change, handle a savings account, use a checkbook and money orders, shower, and bathe; and he has no problem getting along with authority figures. Tr. 51, 55, 195–97, 199. He washes dishes "every once in a great while" because his mother "just does them." Tr. 55. He does not know if he can vacuum because he has never tried. Tr. 55. Although he cannot concentrate enough to read or have a conversation, he can watch a movie. Tr. 54. Although at the hearing in October 2018 he testified he cannot go grocery shopping because he does not like being around people, Tr. 52, in a function report dated May 2016, he stated he shops for food once every few weeks and spends time with others twice a week (at a friend's house, store, or home), Tr. 196–97. Substantial evidence supports the ALJ's determination that Funk's daily activities are inconsistent with his alleged symptoms.

Funk argues the ALJ failed to account for the side effects of Funk's medication, including fatigue. Doc. 17 at 14. The ALJ acknowledged Funk reported fatigue from his medications. Tr. 33. To the extent Funk suggests this fatigue would cause him to be off task for a large part of the workday, he points to nothing in the record supporting such a finding. Doc. 17 at 14.

### B. *No apparent conflict between the VE's testimony and the DOT exists.*

At the hearing, the ALJ asked the VE about a hypothetical person limited, in part, to "simple, routine tasks" and to "making simple, work-related decisions." Tr. 64. The VE identified three jobs the hypothetical person could perform and opined his testimony was consistent with the DOT. Tr. 64–65. The

10

jobs the VE identified have a reasoning level of two,[5] which requires an ability to "carry out detailed but uninvolved written or oral instructions." U.S. Dep't of Labor, Dictionary of Occupational Titles (4th ed. 1991), § 239.567-010, 1991 WL 672232 (office helper); *id.* § 209.687-026, 1991 WL 671813 (mail clerk); *id.* § 723.684-018, 1991 WL 679521 (assembler II).

Funk argues a person limited to "simple, routine tasks" and to "making simple, work-related decisions" cannot "carry out detailed but uninvolved written or oral instructions" because the words simple and detailed are "commonly understood to be antonyms, not synonyms." Doc. 17 at 16–20.

After the parties submitted their briefs, the Eleventh Circuit issued a published opinion holding there is no apparent conflict between a limitation to following simple instructions and making simple, work-related decisions and jobs that require the ability to follow detailed but uninvolved instructions (reasoning level two). *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1323–24 (11th Cir. 2021). Based on this binding authority, Funk's argument regarding the limitation to simple, work-related decisions fails.

The Eleventh Circuit, in an unpublished opinion, has also held that an RFC of "simple, routine, and repetitive tasks" is not inconsistent with a job with a reasoning level of two. *Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1009 (11th Cir. 2020) (citing the ALJ's duty under *Washington* to affirmatively identify and resolve apparent conflicts between the VE's testimony and DOT but not using the "apparent conflict" language in its holding, instead saying the two were "not inconsistent"). Based on this non-binding but persuasive

---

[5]The DOT assigns jobs a reasoning level, with one the lowest and six the highest. DOT, App'x C, 1991 WL 688702.

11

authority, Funk's argument regarding the limitation to "simple, routine tasks" fails.

No apparent conflict between the VE's testimony and the DOT exists, and the ALJ's reliance on the VE's testimony was proper.

## VI. Conclusion

The Court **affirms** the Acting Commissioner's decision and **directs** the clerk to enter judgment for the Commissioner and against Allan Funk and close the case.

**Entered** in Jacksonville, Florida, on October 4, 2021.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*